FILED
CLERK, U.S. DISTRICT COURT
3/16/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: VAM DEPUTY

TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental and Community Safety Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3359
    E-mail:   mark.a.williams@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>DAVID EARL GILLIES,<br>FOGGING SOLUTIONS LLC,<br>  dba MOUNTAIN FOG,<br><br>    Defendants. | No.     2:22-cr-00091-FMO-2<br><br>PLEA AGREEMENT FOR DEFENDANT FOGGING SOLUTIONS LLC, dba MOUNTAIN FOG |

1. This constitutes the plea agreement between defendant FOGGING SOLUTIONS LLC, dba MOUNTAIN FOG ("defendant" or "MOUNTAIN FOG") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2. Defendant agrees to:

a. At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a two-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with using a registered pesticide in a manner inconsistent with its labeling in violation of 7 U.S.C. §§ 136j(a)(2)(G), 136*l*(b)(1)(A); 18 U.S.C. § 2(b).

b. Not contest facts agreed to in this agreement.

c. Abide by all agreements regarding sentencing contained in this agreement, and affirmatively recommend and advocate for the sentence agreed to by the parties in paragraph 15.

d. Appear for all court appearances, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g. Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

### THE USAO'S OBLIGATIONS

3. The USAO agrees to:

a. Not contest facts agreed to in this agreement.

b. Abide by all agreements regarding sentencing contained in this agreement.

### COMPANY AUTHORIZATION

4.     Defendant represents that it is authorized to enter into this agreement.  On or before the change of plea hearing pursuant to this agreement, defendant shall provide the USAO and the Court with a notarized legal document certifying that defendant is authorized to enter into and comply with all of the provisions of this agreement.  Such resolution(s) shall designate a company representative who is authorized to take the actions specified in this agreement, including pleading guilty on behalf of the company, and shall also state that all legal formalities for such authorizations have been observed.

## ORGANIZATIONAL CHANGES AND APPLICABILITY

5.     This agreement shall bind defendant, its successor entities (if any), parent companies, and any other person or entity that assumes the liabilities contained herein ("successors-in-interest").  Defendant, or its successors-in-interest, if applicable, shall provide the USAO, the United States Probation Office for the Central District of California, and the Environmental Protection Agency, Criminal Investigation Division, with immediate notice of any name change, business reorganization, sale or purchase of assets, divestiture of assets, or similar action impacting their ability to pay the fine or affecting this agreement.  No change in name, change in corporate or individual control, business reorganization, change in ownership, merger, change of legal status, sale or purchase of assets, or similar action shall alter defendant's responsibilities under this agreement.  Defendant shall not engage in any action to seek to avoid the obligations and conditions set forth in this agreement.

## NATURE OF THE OFFENSES

6. Defendant understands that for defendant to be guilty of the crimes charged in counts one and two, that is, using a registered pesticide in a manner inconsistent with its labeling in violation of 7 U.S.C. §§ 136j(a)(2)(G), 136l(b)(1)(A), 18 U.S.C. § 2(b), the following must be true: defendant knowingly and willfully caused the use of a registered pesticide in a manner inconsistent with the pesticide's labeling.

## PENALTIES AND RESTITUTION

7. Defendant understands that the statutory maximum sentence that the Court can impose for each violation of 7 U.S.C. §§ 136j(a)(2)(G), 136l(b)(1)(A), 18 U.S.C. § 2(b), is: a 5-year period of probation; a fine of $200,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $125.

8. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: a 5-year period of probation; a fine of $400,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $250.

9. Defendant agrees to make full restitution to the victims of the offenses to which defendant is pleading guilty as well as the related criminal conduct. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty. In particular, defendant agrees that the Court may order

4

restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those charges. The parties currently believe that the applicable amount of restitution is approximately $11,097.40, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

## SUSPENSION, REVOCATION, AND DEBARMENT

10.  Defendant understands that if defendant holds any regulatory licenses or permits, the convictions in this case may result in the suspension or revocation of those licenses and permits. The USAO makes no representation or promise concerning suspension or debarment of defendant from contracting with the United States or with any office, agency, or department thereof. Suspension and debarment of organizations convicted under various federal environmental protection and criminal statutes is a discretionary administrative action solely within the authority of the federal contracting agencies. Defendant understands that unanticipated collateral consequences such as this will not serve as grounds to withdraw defendant's guilty plea.

## FACTUAL BASIS

11.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty

to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

In 2020, the novel coronavirus SARS-CoV-2 ("COVID-19") caused a global pandemic that sickened and killed millions of people, including many in the United States. As a result of the pandemic, it was well-known that the U.S. Environmental Protection Agency ("EPA") and other agencies strictly regulated disinfectants and personal protective equipment that could be used to protect healthcare workers and the public from COVID-19. As part of that regulatory effort, the EPA created the "List N: Disinfectants for Coronavirus (COVID-19)" that listed products that killed COVID-19 when used according to the products' labeling.

Co-defendant DAVID EARL GILLIES ("GILLIES") formed defendant MOUNTAIN FOG in March 2020 to provide fogging disinfection services for homes and businesses, including treating the locations for COVID-19. GILLIES served as the Registered Agent and Managing Partner with the majority interest in the business while his two family members held equal minority interests.

GILLIES and MOUNTAIN FOG used two products when they provided fogging disinfection services in houses and businesses. Their employees would first apply "Alpha," which they claimed would kill COVID-19. Their employees would then apply "Omega," which they claimed would kill COVID-19 on surfaces for 90 days after treatment. MOUNTAIN FOG's website claimed that "if someone coughs or sneezes, the droplets will fall out of the air over time and come in contact

with the Omega treated surface. Upon contact, the microbe will be killed and the surface made safe." MOUNTAIN FOG's website also claimed that "[w]e warrant that this process will kill virus, bacteria and mold and keep treated areas sterile for 90 days."

GILLIES knew that Alpha and Omega were actually different registered pesticides that he and Company 1 re-named and claimed were their own. Alpha was actually a registered pesticide called Minncare, a product that could only be used to sterilize hard surfaces if applied for 11 hours. Omega was also a different registered pesticide called SiS AM500 that was not registered for use against any viruses. GILLIES knew that Alpha and Omega were not approved by EPA to kill COVID-19. The actual labels for both registered pesticides specifically stated that "[i]t is a violation of Federal Law to use this product in a manner inconsistent with its labeling."

In June 2020, a Special Agent with the Environmental Protection Agency, Office of Criminal Investigations, who was working in an undercover capacity (the "UC"), contacted MOUNTAIN FOG about using the company's disinfection services at several properties in the Los Angeles area. MOUNTAIN FOG's employee indicated that they refer to the company's service as "sterilization" as opposed to disinfection or sanitization, and also claimed that Alpha and Omega were food safe, plant safe, and safe for children. MOUNTAIN FOG's employee stated that he could provide a print-out stating "guaranteed 90 days certified sterilized" that could be placed on the properties that were treated by the company.

After selling MOUNTAIN FOG's COVID-19 fogging treatment to the UC, on June 23, 2020, an employee of MOUNTAIN FOG arrived at the

7

undercover house to provide the fogging services. The employee set up the fogging equipment and showed the Alpha and Omega products that he intended to use to the UC, but the undercover operation was stopped once the fogger was turned on. When one of MOUNTAIN FOG's salesmen was confronted by the UC after the undercover operation was halted, the employee indicated, among other things, that he was uncomfortable with the COVID-19 related claims and "strongly" raised his concerns to GILLIES, but GILLIES assured him that "we can make the [COVID] claims."

GILLIES and MOUNTAIN FOG sold and provided the same COVID-19 fogging services on at least six other occasions and received approximately $11,097.40 from its customers as payment for those services and sales related to pesticide products. For example, with respect to count one, in April 2020 MOUNTAIN FOG's employees provided COVID-19 fogging services to a business in Culver City, California. The employees applied Alpha and Omega inside the business in a manner that was inconsistent with the pesticides' labeling because the pesticides were not approved to kill COVID-19. MOUNTAIN FOG also provided a certificate to the business that stated "Covid-19 Safe Area" and "ALL BACTERIA, MOLD, AND VIRUSES HAVE BEEN ELIMINATED AND A PROTECTIVE BARRIER HAS BEEN APPLIED. ALL SURFACES TREATED WITH THIS PROCESS WILL REMAIN MICROBE FREE FOR AT LEAST 90 DAYS AS CONFIRMED BY THE EPA/FDA."

In addition, with respect to count two, MOUNTAIN FOG provided COVID-19 fogging services to a private residence in the Central District of California. MOUNTAIN FOG's employees applied the Alpha and Omega chemicals inside that residence in a manner that was

inconsistent with the pesticides' labeling because the pesticides were not approved to kill COVID-19.

## SENTENCING AGREEMENT

12. Defendant and the USAO agree and stipulate that, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 8C2.1 and 8C2.10, the sentencing guidelines are not applicable in determining the fine for an organization convicted of violating 21 U.S.C. §§ 331(a), 333(a)(1), 352(a)(1), but all other sections of Chapter 8 of the U.S.S.G. are applicable in this case, including the provisions regarding probation. Defendant understands that in determining defendant's sentence, the Court is also required to consider the factors set forth in Title 18, United States Code, Sections 3553(a) and 3572, including the kinds of sentences and sentencing ranges established under the Sentencing Guidelines.

13. Pursuant to Chapter 8 of the Sentencing Guidelines and the factors set forth in Title 18, United States Code, Sections 3553(a) and 3572, including the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant, the parties agree that defendant shall be sentenced as follows:

    a. A two-year period of probation with terms and conditions to be set by the Court; and

    b. A fine of $10,000.

    c. Restitution, as set forth above.

    d. A special assessment of $250.

## WAIVER OF PRESENCE REPORT AND REQUEST FOR IMMEDIATE SENTENCING

14. Defendant requests, and the government does not object, that defendant be sentenced as soon as possible following the entry of defendant's guilty plea. To the extent defendant has a right to a presentence investigation and preparation of a presentence report, defendant hereby knowingly, voluntarily, and intelligently waives that right. Defendant requests that the court find, pursuant to Federal Rule of Criminal Procedure 32(c)(1), that the information in the record in this plea agreement, as well as any supplemental evidence offered at the sentencing hearing, is sufficient to enable the court to exercise its sentencing authority meaningfully without a more complete presentence investigation and report. The parties understand and agree that, in the event that the court declines to make this finding and instead orders that a presentence investigation be conducted and/or a presentence report prepared, such action shall have no effect on the validity of this agreement or any of its terms or conditions and shall not provide a basis for either party to withdraw from the plea agreement.

## WAIVER OF CONSTITUTIONAL RIGHTS

15. Defendant understands that by pleading guilty, defendant gives up the following rights:

    a. The right to persist in a plea of not guilty.

    b. The right to a speedy and public trial by jury.

    c. The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

   d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

   e. The right to confront and cross-examine witnesses against defendant.

   f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

   g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

   h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTIONS

16. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

17. Defendant agrees that, provided the Court imposes a total term of probation on all counts of conviction of no more than five years, defendant gives up the right to appeal all of the following:

(a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of probation imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18. The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEAS

19. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then: (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up

12

all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

20. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

21. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

22. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

23. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

24. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

14

to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

25. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

26. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional

promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

27. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
United States Attorney

*Mark A. Williams*      March 14, 2022

MARK A. WILLIAMS      Date
Assistant United States Attorney

_____      3-3-2020
Name: David Gillés      Date
Title: Managing Partner
Authorized Representative of
Defendant FOGGING SOLUTIONS LLC,
dba MOUNTAIN FOG

*Kamron Keele*      3/3/22

KAMRON KEELE      Date
Attorney for Defendant
FOGGING SOLUTIONS LLC,
dba MOUNTAIN FOG

16

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____     3-3-2022
Name: David Gillies                    Date
Title: Managing Partner
Authorized Representative of
Defendant FOGGING SOLUTIONS LLC,
dba MOUNTAIN FOG

17

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am defendant FOGGING SOLUTIONS LLC, dba MOUNTAIN FOG's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_/s/ Kamron Keele_  3/3/22

KAMRON KEELE              Date
Attorney for Defendant
FOGGING SOLUTIONS LLC,
dba MOUNTAIN FOG